UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RAHEEM JOHNSON,                              :

          Plaintiff          :   CIV. ACTION NO. 1:24-CV-890

        v.                       :        (JUDGE MANNION)

BOOSE, *et al.*,                             :

          Defendants         :

## MEMORANDUM

Presently before the court in this prisoner civil rights case is a motion for summary judgment filed by the two remaining defendants. For the reasons that follow, the motion will be granted, and this case will be closed.

## I.   PROCEDURAL HISTORY

Plaintiff, Raheem Johnson, filed this case in the United States District Court for the Eastern District of Pennsylvania. Johnson originally raised two sets of distinct legal claims, one focused on civil rights violations arising out of the alleged mishandling of his diet during his incarceration at SCI-Chester, the other on the alleged confiscation of some of his legal documents during his incarceration at SCI-Camp Hill. (Doc. 3). The Eastern District severed the SCI-Camp Hill claims from the other claims and transferred them to this district on May 22, 2024. (Docs. 1-2). Upon being transferred, the claims were initially assigned to United States District Judge Christopher C. Conner.

On August 30, 2024, Judge Conner dismissed the complaint for failure to state a claim pursuant to a screening review under 28 U.S.C. § 1915A and granted Johnson leave to file an amended complaint. (Docs. 11-12). Johnson filed an amended complaint on September 24, 2024, which the court received and docketed on October 2, 2024. (Doc. 13).

According to the allegations in the amended complaint,[1] Johnson was an inmate in SCI-Chester in 2023, when he was transferred to SCI-Camp Hill from March 21, 2023, to March 23, 2023, so that he could be taken to a civil trial in another case before Judge Conner. (Doc. 13 at 2). Unhappy with his treatment at SCI-Camp Hill, Johnson purportedly informed counsel for the defendants in the other case that he would be willing to settle the case before trial if they could arrange to have him transferred back to SCI-Chester within 24 hours. (*Id.* at 2-3). Defendants agreed, Johnson was transferred back to SCI-Chester, and the parties settled the case. (*Id.* at 3).

After agreeing to the settlement, Johnson was transported back to SCI-Camp Hill before his transfer back to SCI-Chester. (*Id.* at 4). Defendant Boose, a correctional officer in SCI-Camp Hill, allegedly overheard Johnson

---

[1] The court summarizes the allegations in plaintiff's complaint solely to aid the reader's understanding of the nature of plaintiff's claims. Nothing in this section shall be construed as a finding that the allegations in the complaint constitute undisputed material facts. The undisputed material facts are addressed below in the "Material Facts" section.

2

telling someone he had settled the case. (*Id.*) Boose allegedly said to Johnson, "You like suing the Department of Corrections." (*Id.*) Johnson allegedly responded, "I only sue when my rights are being violated." (*Id.*) Boose then purportedly told him, "You['re] at Camp Hill, you have no rights here." (*Id.*) Johnson stated that he understood, which purportedly made Boose "upset." (*Id.*) Boose then allegedly stated, "In fact, I am confiscating your legal mail, you won't be able to sue anyone else for some time." (*Id.*)

After being served with the amended complaint, defendants filed a motion to dismiss on December 9, 2024. (Doc. 18). The case was then reassigned to the undersigned on January 21, 2025, following Judge Conner's retirement from the court.

On August 19, 2025, the court granted the motion to dismiss in part and denied it in part, allowing the case to proceed as to the retaliation claim against defendant Boose and the access to courts and due process claims against defendants Boose and Baptist. (Docs. 27-28). Defendants filed an answer to the amended complaint on September 23, 2025. (Doc. 31). Defendants then filed a motion for summary judgment along with a statement of material facts and a supporting brief on February 27, 2026. (Docs. 33-35). Johnson responded to the motion on May 1, 2026. (Docs. 39-40). The motion for summary judgment is ripe for review.

3

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 254 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a

4

genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

III.   **MATERIAL FACTS**[2]

   A.   **Facts Related to Liability**

On February 22, 2023, Johnson was transported to SCI-Camp Hill following a pretrial conference in the Harrisburg courthouse of this district. (Doc. 34 ¶2; Doc. 40 ¶2). When an inmate returns to SCI-Camp Hill, the prison's standard practice is to collect and scan any documents the inmate is carrying so that they can be tested for illicit substances. (Doc. 34 ¶3; Doc. Doc. 34-1 ¶3).[3] The inmate's paperwork is confiscated by the prison's

---

[2] Local Rule 56.1 requires a motion for summary judgment to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" and requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts, which "shall include references to the parts of the record" that support the nonmovant's opposition to the motion. M.D. Pa. L.R. 56.1. In this case, both parties filed statements of material fact as required by Rule 56.1. (Docs. 34, 40). The court's statement of facts is derived from those statements and the evidence cited by the parties.

[3] Johnson asserts that this is not standard practice, but the only evidence he cites to support this assertion is the absence of a specific written policy in the inmate handbook or Department of Corrections policy providing for such searches. (See Doc. 40 ¶3). Defendants have produced a declaration from defendant Baptist, SCI-Camp Hill's intelligence gathering captain, that this was a standard practice, and defendant Baptist does not state that it was required by DOC policy or any other written policy. Thus, to create a genuine issue of material fact, Johnson would need to produce evidence that this was not a standard practice; he cannot simply rely on the absence of a written policy requiring the practice. Because he has not produced any such evidence, the court deems this fact undisputed.

reception team and tested by the security office with Electronic Drug Detection Equipment ("EDDE"). (Doc. 34 ¶4; Doc. 34-1 ¶3).[4] On February 22, 2023, Johnson was issued a confiscation slip, which stated that his "legal work" was confiscated. (Doc. 34 ¶5; Doc. 34-2; Doc. 40 ¶5).

On February 23, 2023, Johnson's paperwork was scanned through the EDDE system, and the test detected the presence of K2.[5] (Doc. 34 ¶6; Doc.

---

[4] Johnson again disputes this statement and asserts that it is not standard practice to scan the documents of an incoming inmate, (Doc. 40 ¶4), but the only evidence he cites is his own declaration that "[it] is not standard protocol at no [sic] facility for any one to confiscate a[n] inmate's legal material for any reason. As that would violate attorney client privilege." (Doc. 38-1 ¶2). Plaintiff has not produced any evidence as to how he has personal knowledge of SCI-Camp Hill's standard practices. Thus, his conclusory and self-serving declaration is insufficient to create a genuine dispute as to this fact. Johnson also states in his declaration that he "knows no machine that can tell anyone that something tests positive for K-2." (Doc. 38-1 ¶6). Johnson has not shown that he is an expert on drug-testing equipment, nor has he shown that he consulted with any such expert or has one available for trial. His conclusory statement is insufficient to establish a genuine issue of material fact.

[5] The court takes judicial notice that K2 is a street name for a form of synthetic marijuana. See Spice/K2, DEA, https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana, last visited June 8, 2026.

7

40 ¶6).[6] The DOC sent the documents to the Cumberland County Forensic Lab for further testing. (Doc. 34 ¶7; Doc. 34-3; Doc. 40 ¶7).[7]

One of the documents confiscated from Johnson was an affidavit from Christopher Amin Gordy that was potentially exculpatory for Johnson in his criminal case. (Doc. 34 ¶11; Doc. 40 ¶11). Amin Gordy died on October 7, 2023, approximately eight months after the affidavit was confiscated. (Doc. 34 ¶12; Doc. 40 ¶12).

---

[6] Johnson asserts that he was not told on that date that the documents tested positive for K2, but he does not dispute that they tested positive for K2.

[7] Johnson questions the authenticity of the exhibit defendants cite—an employee report of incident—asserting that it does not include a date or a shift commander signature. (Doc. 40 ¶7). This is untrue. The document is signed by shift commander Kuzar and dated February 23, 2023, at the top of the document. (*See* Doc. 34-3 at 1). Johnson further asserts that the document was created after the fact, (*see* Doc. 40 ¶7), but does not offer any evidence to prove this fact. Finally, Johnson notes that the incident report lists the time as approximately 11:15, despite the confiscation of the documents occurring at 11:18. (Doc. 39 at 11). "How could the report be wrote at 11:15," Johnson wonders. (*Id.*) The reference to 11:15 on the employee incident report appears to be a reference to when the incident occurred and not, as plaintiff suggests, the time when the report was written. Johnson has not produced any additional evidence to show that the time listed on an employee report of incident is customarily listed as the time when the report is listed rather than the time of the incident. Such evidence would be necessary for this fact to create a genuine issue of material fact. Accordingly, the court finds that there is no genuine dispute of material fact that the document was sent to the Cumberland County Forensic Lab for further testing.

## B.    Grievance Policy

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (*See* DC-ADM 804, Doc. 4-11). Under DC-ADM 804, a prisoner must first submit a grievance within fifteen working days from the date of the incident. *Id.* §1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make." *Id.* §1(A)(11). If the inmate is unable to comply with the fifteen-day deadline, he may request an extension of time to file a grievance. *Id.* §1(C)(2). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. *Id.* §2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. *Id.* §2(B)(1)(b).

## C.    Plaintiff's Exhaustion Filings

Johnson filed a grievance complaining that Boose confiscated his documents in retaliation for his protected activity on March 5, 2023. (Doc. 34 ¶17; Doc. 40 ¶17). The grievance was denied by an initial review response on March 24, 2023. (Doc. 34 ¶18; Doc. 34-10 at 5; Doc. 40 ¶18). Johnson appealed the initial review response, but his appeal was rejected as untimely.

9

(Doc. 34 ¶18; Doc. 40 ¶18). Although Johnson dated the appeal March 30, 2023, the postmark indicates that it was not mailed until April 26, 2023. (Doc. 34-10 at 2-4). Johnson states that he attempted to mail the appeal on March 31, 2023, but that it was sent back to him and that the April 26, 2023, mailing was his second attempt to send the appeal. (Doc. 40 ¶19). He has produced cash slips indicating that he requested payment of postage to send the appeal on March 31, 2023. (Doc. 38-2 at 9-10).

## IV. DISCUSSION

Defendants seek summary judgment because Johnson failed to exhaust administrative remedies, because his claims fail on their merits, and because they are entitled to qualified immunity. (Doc. 35). The court begins its analysis with the merits. Because the court ultimately finds that defendants are entitled to summary judgment on the merits of Johnson's claims, it does not consider defendants' exhaustion and qualified immunity arguments.

The court begins with the retaliation claim. To succeed on a retaliation claim, a plaintiff must prove (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the

10

protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Causation may be establish by showing either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing. *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361-62 (3d Cir. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Causation may also be implied by "the record as a whole." *Id.* (citing *DeFlaminis*, 480 F.3d at 267). Even if a plaintiff can establish the retaliation claim, defendants can still defeat the claim "by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

In this case, defendants concede the first two elements of the retaliation claim against Boose[8] because Johnson engaged in protected activity by filing a prior lawsuit and Boose confiscated his documents. (Doc. 35 at 4). Defendants argue, however, that Johnson cannot establish causation because the record shows that Boose confiscated the documents pursuant to a standard practice in SCI-Camp Hill to confiscate documents and scan them for illicit substances upon a prisoner's entry into the prison.

---

[8] Johnson does not bring a retaliation claim against defendant Baptist.

11

(*Id.* at 5-6). Johnson argues that defendants have not produced any evidence to show that searching an inmate's documents was a regular practice at SCI-Camp Hill and that Boose therefore must have confiscated the documents in retaliation. (Doc. 39 at 6-7).

The court finds that Boose is entitled to summary judgment on the retaliation claim. Defendants have produced a declaration from defendant Baptist, the intelligence gathering captain at SCI-Camp Hill, that confiscating documents and testing them for illicit substances is a regular practice, (Doc. 34-1), and Johnson has not produced any evidence to refute this assertion other than his own declaration, which does not provide any statement as to how he would have personal knowledge of SCI-Camp Hill's standard practices. Moreover, it is clear from the record that the documents were not returned to Johnson following the initial confiscation because they tested positive for the presence of K2. Thus, the record shows that the documents would have been confiscated for a legitimate penological interest regardless of any possible retaliatory motive. Summary judgment will accordingly be granted on the retaliation claim.

Turning next to the access to courts claim, to succeed on this claim, Johnson would have to prove that: (1) prison officials impeded his access to courts and (2) he suffered an actual injury in his ability to access the courts.

12

*Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Rivera v. Monko*, 37 F.4th 909, 915 (2022).

The access to courts claim plainly fails. The claim is based on defendants confiscating the Amin Gordy affidavit, but there is no genuine dispute that the affidavit tested positive for the presence of K2. There is simply no basis to conclude that the defendants violated Johnson's First Amendment right of access to the courts by confiscating a document because it tested positive for an illicit substance.

The due process claim similarly fails. Due process claims based on destruction or deprivation of a prisoner's personal property fail as a matter of law if the government provides adequate post-deprivation procedures to remedy the loss of the property. *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984). The DOC's grievance process generally provides an adequate post-deprivation remedy for the deprivation of property. *See, e.g.*, *Pressley v. Johnson*, 268 F. App'x 181, 183 (3d Cir. 2008); *Jordan v. Horn*, 165 F. App'x 979, 981 (3d Cir. 2006). Here, the DOC plainly provided adequate process when it returned to Johnson all documents that did not test positive for K2 and only confiscated the documents containing K2. Accordingly, summary judgment in favor of defendants is warranted on the merits of Johnson's claims.

## V.   CONCLUSION

For the foregoing reasons, the court will grant defendants' motion for summary judgment and close this case. An appropriate order shall issue.

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 6/11/26

24-890-02

14